IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **LEWIS EASTLICK, M.D.** § § § | |
| **Plaintiff,** § § | Civil Action No. 3:19-CV-00245-E |
| v. § § | |
| **TRIVIKRAM REDDY, VCARE HEALTH SERVICES, PLLC, TEXAS CARE CLINICS, PLLC, WAXAHACHIE MEDICAL, PLLC, TVR MANAGEMENT, LLC, and TVR HOLDINGS, LLC** § § § § § § § | |
| **Defendants.** § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff United States of America's Motion for Entry of Default Judgment, filed May 24, 2022 ("Plaintiff's Motion"). (Doc. 41). For the reasons stated below, Plaintiff's Motion is GRANTED.

### I.   BACKGROUND

On December 21, 2020, the United States filed a Complaint in Partial Intervention (Complaint) against Defendants to recover damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (FCA), as well as common law and equitable theories of unjust enrichment and payment by mistake. (Doc. 25). The Complaint alleges Defendant Reddy controlled, operated, or owned each of the other Defendant entities—VCARE Health Services, PLLC; Texas Care Clinics, PLLC; Waxahachie Medical, PLLC; TVR Management, LLC; and TVR Holdings, LLC. (Doc. 25 at 10-12). The Complaint referenced parallel criminal proceedings against Defendant Reddy based on the same alleged fraudulent billing scheme. (Doc. 25 at 9 (citing *United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 1 (N.D. Tex. Nov. 20,

2019)).[1] The Court takes judicial notice of the public documents in *United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E (N.D. Tex. Nov. 20, 2019).

After indictment, the Government brought a superseding information against Reddy, charging him with one count of Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349. ((*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 45 at 1). On September 17, 2020, Reddy pled guilty. (*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 42, 50, 51, 52). The Court entered a judgment as to Reddy: (i) sentencing him to 240 months of incarceration and three years of supervised release and (ii) requiring him to pay restitution in the total amount of $52,870,295.41. (*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 88 at 2-6).[2] On January 23, 2022, the Court entered an amended judgment in which the terms of imprisonment and supervised release remained the same, but the total amount in restitution that Reddy had to pay changed to $50,846,614.14—including $2,549,744.11 to the FEHB and $5,668,606.00 to Medicare. (*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 137 at 7).

In this proceeding, the Court issued summons on Defendants on February 8, 2021. (Doc. 30). Thereafter, Plaintiff filed proofs of service on Defendants, which show Defendants were served with a copy of the summons and complaint on February 24, 2021. (Doc. 31). No Defendant filed an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Plaintiff moved for the Clerk's entry of default on June 18, 2021, (Doc. 37), which the Clerk granted on the same date. (Doc. 39). Plaintiff's Motion

---

[1] The Case No. 3:19-cr-00597-E proceeding occurred before this Court.

[2] The judgment specified restitution of $5,668,606 owed to Medicare. (*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 88 at 6).

seeks only monetary damages—including treble damages—as pleaded in the Complaint. (Docs. 25, 41). Plaintiff "elects to recover on its FCA claims only"—explaining "the Court need not address the merits of its common law claims for payment by mistake and unjust enrichment. (Doc. 41 at 16 n.5). Defendants did not respond to Plaintiff's Motion. The issue is now ripe for consideration.

## II. LEGAL STANDARD

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). This policy, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Thus, entry of a default judgment is within the Court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("[A] district court has the discretion to decline to enter a default judgment."). The Fifth Circuit looks to the following six factors when considering whether to enter a default judgment: (i) if the default was caused by a good faith mistake or excusable neglect; (ii) if there has been substantial prejudice; (iii) the harshness of a default judgment; (iv) if there are material issues of fact; (v) if grounds for a default judgment are clearly established; and (vi) if the court would think itself obligated to set aside the default on the defendant's motion. *Lindsey*, 161

F.3d at 893 (holding that a district court did not abuse its discretion when denying a motion for default judgment when these factors weighed against granting the motion).

The determination of whether to enter a no-answer default judgment involves a three-step analysis. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, it must be found that—after service—a defendant failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Second, the Clerk must have entered a default—after default was established by affidavit or otherwise. Fed. R. Civ. P. 55(a). Third, a plaintiff must have applied to the Clerk or the Court for a default judgment and proven entitlement to same. Fed. R. Civ. P. 55(b)(2) ("the party must apply to the court for a default judgment.").

### III.  ANALYSIS

#### A. Whether Defendant Failed to Timely Plead or Otherwise Respond to the Complaint

As a prerequisite for the defendant's obligation to answer or respond to a suit, the Court must determine whether Plaintiff properly served Defendant. Fed. R. Civ. P. 4(c). Federal Rule of Civil Procedure 4(h) describes the process for serving a corporation, partnership, or association. Fed. R. Civ. P. 4(h). If the association is served within a judicial district of the United States, it may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A-B). Federal Rule of Civil Procedure 4(e)(1) states:

> **(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
> > **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

Fed. R. Civ. P. 4(e)(1). Thus, under Rule 4(e)(1), the Court looks to the Texas Rules of Civil Procedure to determine propriety of service. Fed. R. Civ. P. 4(e)(1). Under the Texas Rules of Civil Procedure, service may be effectuated by "delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition." Tex. R. Civ. P. 106(a)(1). Under Texas law, filing entities—including limited liability companies—may be served through their president, vice president, or registered agent. Tex. Bus. Orgs. Code Ann. § 5.201(b) ("The registered agent . . . is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity[.]"); *see also* Bus. Orgs. § 5.255(1). Texas law requires "strict compliance with the rules for service." *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).[3]

Texas Rule of Civil Procedure 107 enumerates the information that must appear on the return of service. Tex. R. Civ. P. 107(b)(9), (10).

> The return of service is not a trivial, formulaic document. It has long been considered prima facie evidence of the facts recited therein. . . . . The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party."

*Primate*, 884 S.W.2d at 152 (internal citations and parentheticals omitted).

Here, the return of service documents provide the summons and complaint were delivered to Defendants by personal service on February 24, 2021. The return of service otherwise meets the requirements for effective service under Texas law. *See* Tex. R. Civ P. 106, 107. Thus, Plaintiff effectively served Defendants in accordance with both the Federal and Texas law. *See* Fed. R. Civ. P. 4(e)(1), (h); Tex. R. Civ. P. 106(a)(1); Bus. Orgs. § 5.201(b). On the record before the Court,

---

[3] "There are no presumptions in favor of valid issuance, service, and return of citation in the face of a writ of error attack on a default judgment." *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).

there is no evidence to rebut the recitations of service. *See Primate*, 884 S.W.2d at 152. The Court must conclude Plaintiff properly served Defendants.

Despite receiving proper service, the Court's docket and record show Defendants have not filed an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Counsel has appeared on behalf of Defendants, (Doc. 34), and the Parties have agreed to extend the deadline to answer (Docs. 32, 33, 35, 36). But, Defendants have filed neither an answer nor any responsive pleading in this case. Furthermore, Defendants filings in this case constitute neither an answer nor a responsive pleading in this case. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Thus, the Court must also conclude that Defendant failed to timely plead or otherwise respond to the complaint under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

### B. Whether the Clerk Entered a Default in Accordance with Federal Rule of Civil Procedure 55

Regarding entry of a default, Federal Rule of Civil Procedure 55 states:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). As concluded above, Defendants failed to plead or otherwise defend against Plaintiff's claims in this case. *See* Fed. R. Civ. P. 55(a).

Here, Plaintiff supported its request for entry of Clerk's default with a declaration from Plaintiff's counsel, Andrew S. Robbins. (Doc. 38 at 4-6). The Robbins declaration declares under penalty of perjury that Defendants (i) were served on February 24, 2021; (ii) appeared and received extensions to file an answer; and (iii) "have failed to file any answer, response, or motion prior to their June 7, 2021 deadline to respond to the Complaint." (Doc. 38 at 4-6). The Robbins declaration otherwise declares that Reddy and the other Defendants are not minors, incompetent or military

service members. (Doc. 38 at 5-6). The Robbins declaration attaches the status report from the United States Department of Defense Manpower Data Center, which shows Reddy had no active duty status among any branch of the Uniformed Services. (Doc. 38 at 8-9). Upon review of Plaintiff's request for entry of Clerk's default, the corresponding Robbins declaration, and the returns of service, the Court must conclude the Clerk properly entered a default against Defendants in accordance with Federal Rule of Civil Procedure 55. *See* Fed. R. Civ. P. 55(a).

### C. Whether Plaintiff Applied for and Has Proven Entitlement to Default Judgment

*i.  Whether an Entry of Default Judgment is Procedurally Warranted*

Demonstrably, Plaintiff has applied for default judgment against Defendant. (Doc. 41). Next, the Court determines whether Plaintiff has proven entitlement to default judgment—beginning with whether default judgment is procedurally warranted under the six *Lindsey* factors. *See Lindsey*, 161 F.3d at 893. First, Defendants have not filed any responsive pleadings, so there exists no material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendants' "'failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.'" *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F.Supp.3d 809, 814 (N.D. Tex. 2015) (quoting *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011)). Third—given that Defendants have had sufficient time to file either an answer to Plaintiff's complaint or explain why they have not done so—the grounds for default are clearly established. *Cf. Elite v. KNR Grp.*, No. 99-41263, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to

suggest Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, counsel has appeared on behalf of Defendants but have filed no answer or other responsive pleading. Fifth, Plaintiff seeks only the relief the law provides, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp.*, Inc., No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if Defendants were to challenge such a default. *Lindsey*, 161 F.3d at 893.

Furthermore, although Plaintiff seeks statutory damages in the amount of $24,655,050.33 and civil penalties in the amount of $1,376,529, those substantial amounts are not dispositive against Plaintiff's Motion. *See US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *3 (N.D. Tex. June 17, 2016), report and recommendation *adopted sub nom. US Green Bldg. Council, Inc v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3766362 (N.D. Tex. July 11, 2016); (*See* Doc. 41). As Plaintiff has pled and the record of Reddy's criminal conviction shows, Reddy admitted to his fraudulent billing scheme as a part of his guilty plea. (Doc. 25 at 31-32); (*See United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 41 at 2). For those reasons, the Court must conclude default judgment against Defendants is procedurally warranted. *Lindsey*, 161 F.3d at 893.

ii.      *Whether There is a Sufficient Basis in the Pleadings for a Default Judgment*

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016).[4] And, as discussed above,

---

[4] *See generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998)).

the result of this default is that Defendants have admitted to Plaintiff's well-pleaded allegations of fact. *Nishimatsu*, 515 F.2d at 1206. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Plaintiff's claims for relief. *Nishimatsu*, 515 F.2d at 1206.

In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Wooten*, 788 F.3d at 497 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Wooten*, 788 F.3d at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Wooten*, 788 F.3d at 498 n.3.

    *a)  Claims under the False Claims Act*

"The FCA is the Government's 'primary litigation tool' for recovering losses resulting from fraud. . . . Under certain circumstances, the FCA permits suits by private parties on behalf of the United States against anyone submitting a false claim to the government." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010) (internal citation and quotation omitted). Here, Plaintiff has pursued its claims under FCA §§ 3729(a)(1)(A-B). 31 U.S.C. § 3729(a)(1)(A-B). At the outset, the FCA prevents a defendant from "challenging issues material

and necessary to his criminal conviction in an attempt to defeat liability under the False Claims Act." *United States ex rel. Bachman v. Healthcare Liaison Pros., Inc.*, 395 F.Supp.3d 785, 787 (N.D. Tex. 2019); (citing *United States v. Boutte*, 907 F.Supp.239, 241 (E.D. Tex. 1995)). Section 3731(e) codifies the principle of collateral estoppel:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e). Plaintiff asserted its claims under FCA § 3730, which enables "civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b); (Doc. 25 at 53-54). Because Reddy's conviction establishes the essential elements of Plaintiff's FCA claims, FCA § 3731(e) precludes him from denying those elements. 31 U.S.C. § 3730(b).

The Fifth Circuit has "adopted four elements that a relator must satisfy in order to state a cause of action under the FCA generally: (1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (i.e., that involved a claim)." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (citing *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009)). FCA §§ 3729(a)(1)(A-B) provide liability as follows:

> (a) Liability for certain acts.--
>     (1) In general . . . any person who—
>         (A) *knowingly* presents, or causes to be presented, a *false or fraudulent claim for payment or approval* [or]
>         (B) *knowingly* makes, uses, or causes to be made or used, a *false record or statement material to a false or fraudulent claim*
> . . . .

> *is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000*, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), *plus 3 times the amount of damages which the Government sustains because of the act of that person*.

31 U.S.C. § 3729(a)(1)(A-B) (emphasis added). The Fifth Circuit has addressed the definitions for "knowingly" and "material" in the context of the FCA as follows:

> The Act's scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." And the Act defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

*United States ex rel. Patel v. Cath. Health Initiatives*, 792 F. App'x 296, 300 (5th Cir. 2019) (quoting *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 182 (2016) (citations omitted) (first quoting 31 U.S.C. § 3729(b)(1)(A); then quoting 31 U.S.C. § 3729(b)(4)).

Here, Plaintiff identified fifty-nine of Defendants' violations of the FCA. (Doc. 25 at 30-52). Plaintiff asserted in its Complaint, *inter alia*:

> The Defendants made material misrepresentations in each claim they submitted to Medicare and [Federal Employee Health Benefits Program (FEHB)] that resulted in payment. These misrepresentations included claims that licensed physicians had performed (or directly supervised) medical services when they had not; representations that certain medical services were provided to Medicare and FEHB beneficiaries when they were not; representations that [Current Procedural Terminology (CPT)] codes and modifiers complied with applicable regulations or other conditions of payment, even though they did not; and the submission of claims for which medical records had been fabricated—often years after the date of service—or otherwise did not exist.
>
> Over an approximately five-year period, Reddy—personally or in his capacity as manager through the TVR entities—caused the Clinics to submit claims for payment totaling more than $33 million dollars to Medicare and FEHB programs resulting in almost $8.5 million dollars in paid claims.
>
> The following table summarizes the total paid by Medicare and FEHB to the Clinics based on false claims submitted (or caused to be submitted) by Defendants:

| Year | Clinic | Medicare Paid | FEHB Paid |
|---|---|---|---|
| 2013 | VCare | $108,374.36 | $0 |
| 2014 | VCare | $752,263.50 | $398,097.38 |
| 2015 | VCare | $1,079,860.08 | $97,175.97 |
| 2015 | Texas Care | $0 | $201,382.49 |
| 2016 | VCare | $1,242,341.43 | $489,884.98 |
| 2016 | Waxahachie Medical | $15,780.28 | $0 |
| 2016 | Texas Care s | $0 | $2,956.67 |
| 2017 | VCare | $126,411.71 | $610,522.98 |
| 2017 | Waxahachie Medical | $745,643.06 | $182,367.57 |
| 2017 | Texas Care | $21,464.50 | $0 |
| 2018 | VCare | $0 | $76,793.81 |
| 2018 | Waxahachie Medical | $813,897.52 | $536,801.60 |
| 2018 | Texas Care | $575,776.82 | $422.55 |
| 2019 | Waxahachie Medical | $294,723.74 | $87,103.22 |
|  | **Sub-Totals** | $5,776,537.00 | $2,683,509.22 |
|  | **Grand Total** | $8,460,046.22[18] | |

> Every single claim submitted by Defendants to Medicare and FEHB for payment included at least one (and often many more than one) material misrepresentation regarding the services provided.

(Doc. 25 at 29-30) (footnote omitted). As discussed hereinabove, Reddy pled guilty to the charge of Conspiracy to Commit Wire Fraud, 18 U.S.C. §1349, which has the following elements: (i) the defendant and at least one other person made an agreement to commit the crimes of health care fraud as charged in the indictment; (ii) the defendant knew the unlawful purpose of the agreement, and (iii) the defendant joined in it willfully, that is, with the intent to further the unlawful purpose. (*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 42, 50, 51, 52); *see United States ex rel. Bachman*, 395 F.Supp.3d at 788. The corresponding factual resume—which Reddy stipulated to—provided, inter alia:

> The defendant, Trivikram Reddy, agrees and admits that, starting in or about January 2014 and continuing through in or about June 2019, Reddy, within the

> Northern District of Texas, did knowingly and willfully combine, conspire, confederate, and agree with co-conspirators to devise a scheme to defraud the Medicare program, Blue Cross Blue Shield of Texas (BCBS), Aetna, UnitedHealthcare, Humana, and Cigna, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by submitting electronically false and fraudulent medical billing claims to such healthcare benefit programs, and in execution of the scheme, caused interstate wire transmissions to and from the Medicare program, Cigna, and other insurers, in violation of 18 U.S.C. § 1343.
>
> Reddy was a Nurse Practitioner licensed in the State of Texas since 2011. From 2014 through 2019, Reddy operated clinics at various times at two different addresses under the business names Vcare Health Services PLLC, Texas Care Clinics PLLC and Waxahachie Medical LLC, located in the Dallas Division of the Northern District of Texas.

(*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 41 at 2). Reddy further admitted he "committed all the essential elements of the offense." (*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF No. 41 at 3).

The Court finds that the conduct for which Reddy pled guilty and for which Reddy was convicted is the same as that alleged by Plaintiff in its Complaint. Thus, Reddy is estopped from denying the essential elements of Plaintiff's claims under the FCA. *See, e.g.*, *United States ex rel. Bachman*, 395 F.Supp.3d at 789. Taking the factual allegations in the Complaint as true, the Court FINDS as follows:

The Court has jurisdiction over the parties and causes of action asserted, and venue is proper in this district. (Doc. 25). The record shows neither Reddy nor any of the other Defendants are minors, are incompetent persons, or are members of the military service. (Docs. 25, 42).

Plaintiff's Complaint enumerates fifty-nine of the Defendants' violations of the FCA. (Doc. 25 at 30-52). The record shows Defendants knowingly presented, or caused to be presented, false or fraudulent claim(s) for payment or approval. 31 U.S.C. § 3729(a)(1)(A). The record shows Defendants knowingly made, used, or caused to be made or used, false record(s) or statement(s)

material to false or fraudulent claims. 31 U.S.C. § 3729(a)(1)(B). That is, Defendants (i) made false statements and engaged in a fraudulent course of conduct; (ii) with actual knowledge of the information, with acts in deliberate ignorance of the truth or falsity of the information, or with acts in reckless disregard of the truth or falsity of the information; (iii) which were material; and (iv) caused the government to pay out money. *See U.S. ex rel. Spicer*, 751 F.3d at 365; *United States ex rel. Patel*, 792 F. App'x at 300; *see also* 31 U.S.C. § 3729(b) (enumerating definitions for "knowing" and "knowingly" under the FCA).

The Court finds and concludes that Plaintiff's pleadings present a sufficient basis for its claims for relief under the FCA. *Nishimatsu*, 515 F.2d at 1206. The Court next turns to Plaintiff's request for damages.

*b) Damages*

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir.2002)). Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979). If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 370 (5th Cir.1993). The Court first addresses Plaintiff's damages sustained because of Reddy's actions and second addresses civil penalties under the FCA.

First, the amount of damages Plaintiff sustained because of Reddy's actions are determinable by reference to the pleadings and supporting documents. In Reddy's criminal proceeding, Reddy was ordered to pay restitution in the amount of $2,549,744.11 to the FEHB and $5,668,606.00 to Medicare. (*United States v. Trivikram Reddy*, Case No. 3:19-cr-00597-E, ECF

No. 137 at 7). Plaintiff's Motion seeks damages based on the combined and trebled amounts of these restitution amounts owed to FEHB and Medicare. (Doc. 41 at 9, 26-28). That is, Plaintiff asserts that the restitution ordered by the Court in the criminal proceedings constitutes the amount of damages sustained. The Court agrees with this approach as another Court in the Northern District of Texas has discussed:

> [] 18 U.S.C. § 3664 requires the sentencing court to determine the total amount of the victim's loss when ordering restitution. *See U.S. ex rel. Lamberts v. Stokes*, 640 F.Supp.2d 927, 930 (W.D. Mich. 2009) (noting that "[s]everal courts have held that a sentencing court's findings of actual loss for purposes of restitution may be used to establish the amount of damages in a subsequent civil action under the FCA."); *United States v. Szilvagyi*, 398 F.Supp.2d 842, 849–50 (E.D. Mich. 2005) (applying the total amount of loss determined under 18 U.S.C. § 3664 on health care fraud conviction as the total amount of loss to Medicare for purposes of damages in FCA action); *United States v. Davis*, No. 05-393-EBA, 2008 WL 1735167, at *5 (E.D. Ky. Apr. 11, 2008) (same); *United States v. Convalescent Trans., Inc.*, No. 4:03-CV-32-FL, 2007 WL 2090210, at *6 (E.D.N.C. July 19, 2007) (same); *United States v. Bickel*, No. 02-3144, 2006 WL 1120439, at *3–4 (C.D. Ill. Feb. 22, 2006) (trebling actual damages portion of restitution amount from criminal proceeding).

*United States ex rel. Bachman*, 395 F.Supp.3d at 789–90. Here, the combined total amount Reddy owed as restitution is $8,218,350.11; trebled, this amount is $24,655,050.33. As the Court has found and concluded that Defendants violated FCA §§ 3729(a)(1)(A-B), the Court further finds and concludes Defendants are liable to Plaintiff for the trebled damages which Plaintiff sustained because of their acts—$24,655,050.33. 31 U.S.C. § 3729(a)(1).

Second, regarding civil penalties under the FCA, case law suggests that a penalty for each act in violation as appropriate. *See United States v. Bornstein*, 423 U.S. 303, 313 (1976) (explaining an FCA Defendant was liable for three separate $2,000 statutory forfeitures for corresponding shipments of falsely branded goods.); *see also Faulk v. United States*, 198 F.2d 169, 171 (5th Cir. 1952). Here, Plaintiff seeks civil penalties from Defendants in the amount of $1,479,484 "representing the statutory maximum penalty applied to the 59 false claims identified

in the Complaint." (Doc. 41 at 26). Adjusted for inflation in accordance with FCA § 3729(a) as of this date, the statutory minimum and maximum for a violation of the FCA are $12,537 and $25,076, respectively. 28 C.F.R. § 85.5 (providing that, after adjustment for inflation, the minimum and maximum penalties for violations of the False Claims Act assessed after May 9, 2022, are "Min 12,537, Max 25,076").[5] However, the Court is not convinced, on this record, that the civil penalties should be higher than the statutory minimum of $12,537 for each respective violation. The Court is confident that a civil penalty of $12,537 for each violation is both sufficient and not excessive. Thus, the Court finds and concludes Defendants are liable to Plaintiff for civil penalties in the amount of $739,683.[6]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff United States of America's Motion for Entry of Default Judgment. (Doc. 41). The Court ORDERS Plaintiff to submit a proposed Final Judgment on or before twenty-one days from the date of this Order. Thereafter, the Court will enter a separate Final Judgment.

**SO ORDERED.**

30th day of January, 2023.

    _____
    ADA BROWN
    UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff has multiplied fifty-nine by $25,076 to arrive at its $1,479,484 civil penalties figure. (Doc. 41 at 26-27).

[6] The Court has multiplied fifty-nine by $12,537 to arrive at its $739,683 civil penalties figure.